# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

In re:   Donnalee M. Demers                                              BK No: 13-11539
         Debtor                                                          Chapter 13

## MEMORANDUM AND ORDER

Donnalee Demers ("Ms. Demers") filed a Chapter 13 petition on June 7, 2013, and shortly thereafter proposed a five year plan to address the claims of her creditors. The Court confirmed a modified plan in August 2013 (the "Plan").[1] Under the Plan Ms. Demers will pay in full a pre-petition mortgage arrearage owed to America's Servicing Company ("ASC").[2] ASC filed a proof of claim listing an arrearage owed on its mortgage of $14,181.61. Ms. Demers objected to the amount of ASC's claim, contending that ASC included in the arrearage calculation $1,979.40 it is not entitled to be paid, consisting of counsel fees of $1,170.00, advertising costs of $534.40, and title costs of $275.00 (together the "Disputed Charges"), all of which relate to a foreclosure proceeding ASC commenced prior to the filing of Ms. Demers' Chapter 13 petition. *See* Limited Objection to Allowance of Claim #4 (Doc. #28). Ms. Demers asserts that ASC is not entitled to payment of the Disputed Charges because it "failed to provide a proper notice of default prior to acceleration and the commencement of foreclosure" as required by the loan agreement. ASC counters that it complied with all contractual provisions of the loan agreement, and even if it did not strictly comply it is contractually entitled to recover the Disputed Charges from Ms. Demers. After consideration of the parties' arguments, I conclude

---

[1] The order confirming the Plan contained slightly different terms than those set forth in Ms. Demers' proposed plan, but those differences are not relevant to the dispute before me.

[2] The Order Confirming Chapter 13 Plan (Doc. #19), submitted by the Chapter 13 Trustee with Ms. Demers' assent and entered by the Court, erroneously states in the "Summary of Disbursements to be Made Under the Plan" that, subject to the filing of a proof of claim and without waiving Ms. Demers' right to object thereto, "Wells Fargo will be paid its pre-petition arrearage in the approximate amount of $15,895." The order should have referred to ASC rather than Wells Fargo. The amount to be paid to ASC is the subject of the parties' present dispute.

that ASC failed to satisfy a condition precedent to its rights to accelerate the debt and pursue its foreclosure remedy. Accordingly, it is not entitled to recover the Disputed Charges as part of its claim.

### I.  Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and DRI LR Gen 109(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### II.  Facts

The facts are undisputed. Ms. Demers received a loan from New Century Mortgage Corporation on November 15, 2005. That loan was evidenced by an adjustable rate note (the "Note") and secured by a mortgage (the "Mortgage") on Ms. Demers' real estate in Woonsocket, Rhode Island (the "Property").[3] ASC is the loan servicer for Deutsche Bank National Trust Company, the present holder of the Note and the Mortgage.

Paragraph 22 of the Mortgage ("Mtg. Paragraph 22") states that in the event of Ms. Demers' breach of the Mortgage, prior to accelerating the Note, ASC "shall" give Ms. Demers notice of, among other things, "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Other potentially relevant provisions of the loan documents include paragraph 14 of the Mortgage ("Mtg. Paragraph 14") and paragraph 7 of the Note ("Note Paragraph 7"). Mtg. Paragraph 14 states:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees . . . .

Note Paragraph 7 states:

---

[3] William J. Demers also was a party to the loan transaction evidenced by the Note and the Mortgage, but Mr. Demers is not a debtor in this bankruptcy case.

2

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

After Ms. Demers defaulted on the Note in June 2012, ASC sent her a notice of default dated September 17, 2012 (the "Notice") stating in part: "If foreclosure is initiated, you have the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have." Memorandum in Opposition to Debtor's Objection to Proof of Claim, Exhibit D (Doc. #38) ("ASC Memorandum"). The Notice did not inform Ms. Demers that she had a right to bring an action in court.

Ms. Demers failed to cure the default, and ASC accelerated the Note and initiated the foreclosure process. In doing so, ASC incurred the Disputed Charges of $1,979.40. Before a foreclosure sale took place Ms. Demers filed her Chapter 13 petition. At issue is whether ASC is entitled to recover the Disputed Charges as part of its claim to be paid by Ms. Demers through her Chapter 13 plan. At a hearing held on December 4, 2013, counsel for Ms. Demers and ASC agreed that the issue is a question of law, and both parties submitted memoranda of law for my consideration.

### III.   The Parties' Arguments

Ms. Demers argues that Mtg. Paragraph 22 "contains a clear unambiguous condition precedent to acceleration." In other words, before ASC could accelerate the Note and commence foreclosure proceedings it was required to provide Ms. Demers a notice specifically stating that she had "the right to bring a court action to assert the non-existence of a default or any other defense." She maintains that because the Notice did not so state, ASC did not satisfy the

3

condition precedent to exercising the power of sale provided for in Mtg. Paragraph 22 and should not be reimbursed for the Disputed Charges related to the acceleration and foreclosure process.

ASC responds with several arguments in support of its recovery of the Disputed Charges, although it does so with little citation to legal authority. First, that the Notice complied with Mtg. Paragraph 22, because ASC was not required to "mirror the exact language" of Mtg. Paragraph 22 to provide effective notice to Ms. Demers of the right to dispute the default. Second, even if the Notice did not comply with Mtg. Paragraph 22, Note Paragraph 7 and Mtg. Paragraph 14 entitle it to collect the Disputed Charges. Third, even if the Notice did not comply with Mtg. Paragraph 22, it was a "technical failure in the notice requirement" that would constitute a "non-material breach" of the Mortgage and thus not relieve Ms. Demers of the obligation to reimburse ASC for these expenses. Lastly, even if the Notice is defective, because Ms. Demers received in 2008 "numerous prior notices of her default that did contain the language that she complains was lacking," she was on notice of her right to bring a court action to refute the default or offer another defense to acceleration.[4]

### IV. Applicable Law and Burden of Proof

Bankruptcy courts generally apply state law to determine the validity and amount of claims. *See Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 450-51 (2007) (*quoting Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.")); *City Sanitation, LLC v. Allied Waste Servs. of Massachusetts, LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 87 (1st Cir. 2011) ("Creditors'

---

[4] These notices referred to by ASC were dated June 15, July 26, August 17, and October 9 of 2008. ASC Memorandum, Exhibit C.

entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation."). Paragraph 16 of the ASC Mortgage states that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located." The Property is in Rhode Island, therefore, I apply Rhode Island law to determine the allowed amount of ASC's claim.

A properly filed claim is deemed allowed unless a party in interest objects, and a properly filed proof of claim is prima facie evidence of the validity and amount of the claim. *See* 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). "In order to rebut the presumption that attaches to a proof of claim, a party objecting must produce 'substantial evidence.'" *United States v. Clifford (In re Clifford)*, 255 B.R. 258, 262 (D. Mass. 2000) (*citing Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993)). "If the objecting party sufficiently rebuts the claimant's prima facie case, the burden shifts back to the claimant as it is ultimately 'for the claimant to prove his claim, not for the objector to disprove it.'" *Notinger v. Auto Shine Car Wash Sys., Inc. (In re Campano)*, 293 B.R. 281, 285 (D.N.H. 2003) (*quoting In re G. Marine Diesel Corp.*, 155 B.R. 851, 853 (Bankr. E.D.N.Y. 1993)). The Supreme Court has stated that the "basic federal rule" that state law governs the substance of claims includes the burden of proof. *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20-21 (2000). Thus, if Ms. Demers produces substantial evidence in support of her objection to ASC's claim, then ASC bears the ultimate burden of proving its claim should be allowed in the amount filed.

V.    **Discussion**

There are two documents at issue here – the Note and the Mortgage. Ms. Demers refers only to the Mortgage and argues that ASC failed to comply with Mtg. Paragraph 22 and consequently did not have the contractual right to accelerate the Note and commence foreclosure

5

proceedings against the Property. ASC refers to both the Note and the Mortgage and argues that even if it failed to comply with Mtg. Paragraph 22 (which it disputes) it is entitled to recover the Disputed Charges under Note Paragraph 7 and Mtg. Paragraph 14.

Rhode Island case law instructs that "instruments executed in the course of a single transaction at the same time and to accomplish the same purpose should be read and construed together." *R.I. Depositors Econ. Prot. Corp. v. Coffey & Martinelli, Ltd.*, 821 A.2d 222, 226 (R.I. 2003). Here, the Note and the Mortgage were executed at the same time as part of one transaction and to accomplish the same purpose – Ms. Demers' receipt of a loan secured by the Property. As a result, the Note and the Mortgage constitute one agreement and must be read and construed together. *See also Emigrant Mortg., Co., Inc. v. D'Agostino*, 896 A.2d 814, 821 (Conn. App. 2006) (a note and a mortgage "are deemed part of one transaction and must be construed together").

The next question then is whether when read as a whole the Note and Mortgage are clear and unambiguous – a question of law. *Haviland v. Simmons*, 45 A.3d 1246, 1258 (R.I. 2012). To determine whether a contract is ambiguous, a court should read the contract as a whole, "giving words their plain, ordinary and usual meaning." *Young v. Warwick Rollermagic Skating Ctr., Inc.*, 973 A.2d 553, 558 (R.I. 2009). A contract is ambiguous when it is "reasonably and clearly susceptible of more than one interpretation." *Rotelli v. Catanzaro*, 686 A.2d 91, 94 (R.I. 1996). If a contract provision is ambiguous, "the construction of that provision is a question of fact." *Haviland*, 45 A.3d at 1259 (*quoting Fryzel v. Domestic Credit Corp.*, 385 A.2d 663, 666 (R.I. 1978)). Reading the Note and Mortgage as an integrated contract, I find the loan agreement between Ms. Demers and ASC is unambiguous and ASC's compliance with Mtg. Paragraph 22 is a condition precedent to its right to accelerate the Note and pursue its remedy of foreclosure

against the Property. That paragraph, in plain and ordinary terms, states that prior to accelerating the Note ASC is required to give Ms. Demers notice of "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The Notice without question did not inform Ms. Demers that she had a right to bring an action in court. Quite clearly the Notice did not comply with this prerequisite.

Even so, if I were to determine that the loan agreement read as a whole is "reasonably and clearly susceptible of more than one interpretation" and potentially ambiguous based upon an arguable inconsistency among Note Paragraph 7 and Mtg. Paragraphs 14 and 22, I would still conclude that under the loan agreement ASC is not entitled to recover the Disputed Charges. Any ambiguity in a contract "must be construed against the drafter of the document," in this case ASC (or its predecessor-in-interest). *Haviland*, 45 A.3d at 1260 (*quoting Fryzel*, 385 A.2d at 666-67). Furthermore, "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I. 2002). I see no reason this loan transaction should be exempted from this general rule. Indeed, in a transaction such as this between an individual homebuyer and a mortgage lender, there is an imbalance of power such that the more powerful and sophisticated party, ASC, must be held to this standard of good faith and fair dealing.

In this regard Ms. Demers asserts that "a mortgagee has a duty to comply with the terms and conditions of the documents that it drafted." This is a key point, uniting the legal principle that I must construe this contract if it were deemed ambiguous against ASC with ASC's duty to deal fairly and in good faith with Ms. Demers. The Mortgage states in plain terms that the Notice "shall" inform Ms. Demers of "the right to bring a court action to assert the non-existence of a default or any other defense." The Notice did not do so; rather, it informed Ms. Demers only of

7

"the right to argue that you did keep your promises and agreements under the Mortgage Note and Mortgage, and to present any other defenses that you may have." *Argue and present defenses to whom, the lender?* The Notice falls short of specifically and clearly informing Ms. Demers of her right to "bring a court action," and for that reason I find that the Notice did not fulfill the condition precedent set forth in Mtg. Paragraph 22. Having failed to satisfy this requirement prior to acceleration and foreclosure, any actions ASC undertook toward acceleration and foreclosure were invalid and any expenses thereby incurred are not recoverable from Ms. Demers under the loan agreement.

For the sake of comprehensiveness, I will specifically address each of ASC's arguments presented. I turn first to its contention that the Notice complied with Mtg. Paragraph 22 because it was not required to "mirror the exact language" of that paragraph to provide effective notice to Ms. Demers of the right to dispute the default. Regardless of whether the Notice was required to "mirror the exact language" of Mtg. Paragraph 22, to satisfy its obligation under the agreement ASC was required to inform Ms. Demers of her right *to bring an action in court*, not merely of her right to dispute the default. The Notice did not do that. Moving on to ASC's argument that even if the Notice did not comply with Mtg. Paragraph 22, Note Paragraph 7 and Mtg. Paragraph 14 nevertheless entitle it to collect its expenses resulting from Ms. Demers' default. This argument begs the question. It assumes that any such expenses were rightfully incurred by ASC. They were not. The Notice did not satisfy the condition precedent to acceleration and foreclosure, and any expenses ASC incurred in connection with such actions were not rightfully incurred and cannot be recovered under these other provisions of the agreement.

I also disagree with ASC's position that, assuming the Notice did not comply with Mtg. Paragraph 22, this was merely a "technical failure in the notice requirement" that would

8

constitute a "non-material breach" of the Mortgage and not relieve Ms. Demers of the obligation to reimburse ASC these expenses. The notice requirement of Mtg. Paragraph 22 was a condition precedent to acceleration and foreclosure. *See* Black's Law Dictionary (9th ed. 2009) (defining "condition precedent" as an act or event "that must exist or occur before a duty to perform something promised arises. If the condition does not occur and is not excused, the promised performance need not be rendered."). Here, the condition was ASC's compliance with Mtg. Paragraph 22's notice requirement; the performance was ASC's right to accelerate and foreclose, which did not come into existence because the condition was not satisfied. ASC cannot recover expenses incurred pursuing a right that was not yet ripe under the loan agreement. In the absence of being provided with case law on this precise issue by either of the parties, the Court has conducted its own review and finds it supports this interpretation of the loan agreement. The Appellate Court of Connecticut notes that it is "well established that notices of default and acceleration are controlled by the mortgage documents." *Emigrant Mortg., Co., Inc.*, 896 A.2d at 821. That court went on to state:

> Notice provisions in mortgage documents usually require default notices to contain specific information, which serves a very clear and specific purpose; it informs mortgagors of their rights so that they may act to protect them. Therefore, when the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure.

*Id*. (internal citations omitted). *See also Samaroo v. Wells Fargo Bank*, No. 5D13-1585, 2014 WL 1255428 at *2 (Dist. Ct. Fla., Mar. 28, 2014) (defendant's default letter failed to satisfy the pre-acceleration notice requirement as a condition precedent to foreclosure where "[i]ts own mortgage specified the important information that it was bound to give its borrower in default, and it simply failed to do so"); *Centr. Mortg. Co. v. Elia*, No. 25505, 2011 WL 2571949 at *4

9

(Ct. App. Ohio, June 29, 2011) (if "prior notice of default and/or acceleration is required by a provision in a note or mortgage instrument, the provision of notice is a condition precedent").

ASC's final argument is easily dismissed. It maintains that even if the Notice is defective, because Ms. Demers received "numerous prior notices of her default that did contain the language that she complains was lacking," she had actual notice of her right to bring a court action. This argument misses the mark entirely. Notices received by Ms. Demers in 2008 – approximately *four years* before the events at issue here – are completely irrelevant to whether ASC fulfilled its contractual obligations giving rise to its right to accelerate the debt and commence foreclosure proceedings based upon a subsequent default in 2012. Where would ASC draw the line? If after the 2008 notices Ms. Demers cured her default, paid faithfully for six, eight or 10 years, then defaulted again, would ASC argue that the 2008 notices satisfy its obligation under Mtg. Paragraph 22 and it could rightfully foreclose without sending a new, updated notice? ASC obviously was aware of the Mtg. Paragraph 22 notice requirement because it sent compliant notices to Ms. Demers following earlier defaults. For unexplained reasons, the Notice sent by ASC upon Ms. Demers' 2012 default deviated from these prior notices and omitted this contractually mandated notice provision. This defect resulted in the invalidity of the foreclosure process ASC pursued and precludes recovery of its associated costs.

### VI.    Conclusion

Ms. Demers has produced substantial evidence in support of her objection to ASC's claim, shifting to ASC the ultimate burden of proving its claim. It is simply inequitable for ASC to shift the costs of its error in proceeding with the foreclosure process to Ms. Demers when it was not entitled under its loan agreement to so proceed due to the defective Notice. I conclude that ASC has not met its burden to establish its entitlement to the Disputed Charges. Ms.

10

Demers' limited objection to ASC's claim is SUSTAINED. ASC's claim is allowed in the amount of $12,202.21, after reducing its claim by the amount of the Disputed Charges.

Dated: June 5, 2014

By the Court,

*Diane Finkle*

Diane Finkle
U.S. Bankruptcy Judge